FILED
2024 Oct-28  PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JOEL KENNAMER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  4:24-cv-647-RDP** |
| } | |
| **CITY OF GUNTERSVILLE, ALABAMA,** } | |
| **et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on the motions to dismiss filed by Defendants City of Guntersville, Alabama ("City") (Doc. # 13), Mayor Leigh Dollar ("Mayor Dollar") (Doc. # 14), and Lakeside Investments, LLC, Lawler Hotels, LLC, and Patrick Lawler ("Lawler Defendants"). (Doc. # 30). These motions are fully briefed. (Docs. # 18-19, 23, 25-26, 31-32, 34-36). For the reasons discussed below, the motions are due to be granted.

## BACKGROUND

Plaintiff Joel Kennamer is a resident of the City of Guntersville, Alabama. (Doc. # 1 ¶ 1). Plaintiff is a pro se party who filed this lawsuit in response to a development project by the City in a public park known as Guntersville City Harbor, which consists of about nine acres of waterfront property on Lake Guntersville. (*Id.* ¶¶ 7, 14, 36). This development project has resulted in Defendant Lakeside Investments building "bars, restaurants, tobacco bars, and condos" (*id.* ¶ 37), and is planned to result in Lawler Hotels, LLC constructing a hotel. (*Id.* ¶ 31). There are two land transactions at issue in this case: a lease in 2019 to Lakeside Investments, LLC, and a conveyance in 2023 to Lawler Hotels, LLC. There are four parcels of land that were involved in these transactions, although for purposes of this memorandum the court refers to them collectively

as the "property" or "properties" and when relevant simply refers to the 2019 and 2023 transactions that involved these parcels. (*See* Doc. # 30-2) (tax map showing the four parcels).

### 1.     Eminent Domain

In 2000, the City condemned a portion of the property through eminent domain, purchasing it in fee simple from CSX Railroad for the purpose of operating "a public boat dock and a public recreational park." (Doc. # 1-1 at 2-4). Plaintiff alleges that after this condemnation, the park was used and advertised for "events such as fishing tournaments, tractor shows, truck shows, class reunions, and many more events." (Doc. # 1 ¶ 18). Plaintiff also alleges that the park was "used for fishing, walking, bird watching, environmental, aesthetic, and general recreation." (*Id.*). In March 2018, the City obtained a declaratory judgment against CSX to amend the condemnation to provide that this property could be used "for any lawful purpose, without restriction." (*Id.* ¶ 20).

### 2.     2019 Transaction with Lakeside Investments

In June 2018, the City ran an advertisement in the local *Advertiser Gleam* newspaper, notifying the public of a proposed resolution to consider a Project Development Agreement in which the City would lease the park property to Defendant Lakeside Investments, LLC. (*Id.* ¶ 21; Doc. # 1-4 at 2). An article was published the same month about the plans for Lakeside Investments to develop the property with "bars, restaurants, cigar bar, condos, and a brewery." (Doc. # 1 ¶ 21). About two weeks later, "at a regularly scheduled council meeting," the City presented this Project Development agreement, and the City council unanimously passed a resolution to suspend the rules and vote immediately on the project. (*Id.* ¶ 22).[1] Resolution No. 1936 was passed, finding that "the Site's best and highest use to the public is to serve as the location for a mixed-use development," and authorizing Lakeside Investments to conduct due diligence for up to one year

---

[1] Plaintiff alleges that "[a] custom exists within the council that the mayor's agenda is always approved." (Doc. # 1 ¶ 22).

and to enter into a lease of forty years with up to four ten-year extensions for a "nominal fee." (*Id.*; Doc. # 1-5 at 2-4). About a week later, the City ran an ad in the *Advertiser Gleam* indicating that "the Park property was surplus and was not needed for public or municipal purposes and the City of Guntersville could find no material use for the Park property." (*Id.* ¶ 23).

In January 2019, at a regularly scheduled meeting, the City approved a resolution to grant an option to lease for 120 days to Lakeside Investments in order to study its potential for use as a private development. (*Id.* ¶ 26). In February 2019, also at a regularly scheduled meeting, the City approved Ordinance No. 1098, which declared that certain park property was "surplus and no longer needed for public or municipal use." (*Id.*). The ordinance also authorized the lease of the property for forty years at $100 per year with up to five additional ten-year terms. (*Id.*). In May 2019, a portion of park property was leased to Lakeside Investments, and in August, another portion was leased to Lakeside Investments. (*Id.* ¶¶ 27-28). Plaintiff alleges that barricades were constructed in the park property and that due to the lease of property, which had partially been used for police storage, the City had to build a new police storage facility at a cost of $400,000. (*Id.* ¶¶ 26, 29).

### 3. Plaintiff's State Court Lawsuit

Plaintiff filed a declaratory judgment action against the City, Lakeside Investments, Mayor Dollar, and all seven members of the Guntersville City Council in 2019 in the Circuit Court of Marshall County, Alabama. (*Id.* ¶ 40); *see Kennamer v. City of Guntersville et al.*, 50-cv-2019-900208 (Circ. Ct. Marshall Cnty., Ala. May 9, 2019). In that lawsuit, Plaintiff complained that the City's actions were not authorized under Alabama Code § 35-4-410, which requires a referendum of voters before a City alienates "public parks." (Doc. # 25-1 at 13); *see* Ala. Code § 35-4-410.

The Circuit Court dismissed this action for failure to state a claim upon which relief could be granted, and on appeal the Alabama Supreme Court affirmed. (Doc. # 1 ¶ 40); *see Kennamer v. City of Guntersville*, 315 So. 3d 1090 (Ala. 2020). The Circuit Court specifically held that article IV, § 94.01 of the Alabama Constitution "overrides § 35-4-410" and that § 35-4-410 "is inapplicable in any event because the real property subject to the [2019] lease at issue was not dedicated as a public park or recreational facility within the meaning of Alabama law." (Doc. # 25-2 at 4). Unlike § 35-4-410, which is a statute, § 94.01 is a provision in the Alabama Constitution. Section 94.01 authorizes municipal governments to lease or sell property for commercial development as long as the action is approved in a public meeting and at least seven days' notice is given in a newspaper of that public meeting. *See* Ala. Const. art. IV, § 94.01(a)(2), (c)(1)-(2). On appeal, Plaintiff argued that "the development lease does not fulfill any purpose permitted under § 94.01(a)(2)," citing cases that construed different statutory language (such as the term "project") to exclude "retail" businesses. (Doc. # 25-3 at 18-22). The Alabama Supreme Court considered and rejected this argument, noting that § 94.01 was a different and more broadly worded law than was involved in the cases Plaintiff cited, and that § 94.01 "permits the development lease of the development property for the City Harbor development." (*Id.* at 39-40). The Alabama Supreme Court also noted that Plaintiff "[did] not dispute that the City fulfilled the procedural requirements of [Alabama Constitution, article IV,] § 94.01." (Doc. # 25-3 at 17). The Alabama Supreme Court further reiterated that § 94.01 "is controlling," and thus Plaintiff's "arguments concerning § 35-4-410 . . . are irrelevant." (*Id.* at 40).

### 4.    2023 Transaction with Lawler Hotels

In March 2022, Patrick Lawler formed Lawler Hotels, LLC. (*Id.* ¶ 30). In May 2022, the City published an article in the local *Advertiser Gleam* newspaper indicating that the City intended

to sell other park property for use as a hotel development. (*Id.* ¶ 31). Plaintiff alleges that this property had been "dedicated for a public amphitheater in the TVA approval." (*Id.*). In June 2022, the City announced that it would consider a resolution to sell this property "for a nominal price of $10.00 to Lawler Hotels, LLC," even though, Plaintiff alleges, "the [property] is estimated to be worth $2.2 million." (*Id.* ¶ 32). Another local hotel developer, Wes Long, offered to pay the City the "appraised value" for this property and to "build a hotel under the same constraints and terms as [the Lawler Defendants]." (*Id.* ¶ 33). Plaintiff alleges that the City "refused to consider this other offer." (*Id.*). The City then voted to approve the resolution to sell this property to Lawler Hotels, even though Long "reiterated his offer to purchase the [property] for $650,000.00." (*Id.* ¶ 34; *see also* Doc. # 1-11 at 4). The City then passed Ordinance No. 1134, which deemed the property to be surplus that would not serve a "public purpose." (Doc. # 1 ¶ 34). Plaintiff alleges that there "has been no referendum or vote of the citizens of the City of Guntersville to authorize said alienation of the Park," which he claims violates Alabama Code § 35-4-410. (*Id.* ¶ 38). Separately, Plaintiff argues this transaction is not authorized under the Alabama Constitution, article IV, § 94.01. (*Id.* ¶ 39).

### 5.    Procedural History of the Current Lawsuit

Plaintiff asserts six counts against Defendants: Count One, which asserts under 42 U.S.C. § 1983 that his substantive and procedural due process rights were violated (*id.* ¶¶ 41-50); Count Two, which asserts under § 1983 that his right to equal protection was violated (*id.* ¶¶ 51-54); Count Three, which asserts a state law claim that Defendants acted *ultra vires* by not complying with Alabama Code § 35-4-410 and article IV, § 94.01 of the Alabama Constitution (*id.* ¶¶ 55-59); Count Four, which asserts a state law claim that Defendants breached their duty as trustees to Plaintiff and other members of the public who are beneficiaries of the park property (*id.* ¶¶ 60-64);

Count Five, which asserts under § 1985(3) that Defendants were engaged in a conspiracy to commit fraud by allowing public property to be developed by a private party for personal benefit (*id.* ¶¶ 65-71); and Count Six, which asserts a state law claim that Defendants conspired to commit fraud by filing a declaratory judgment action without proof of controversy and by claiming that certain properties were surplus when they were not. (*Id.* ¶¶ 72-75). Plaintiff requests compensatory damages, punitive damages, and injunctive relief, along with fees and costs. (*Id.* at 16-17).

The filings in this case appear extensive due to multiple substitute briefs being filed after the court issued its Initial Order. (Doc. # 16). After this action was filed, the City filed a motion to dismiss (Doc. # 13), and Mayor Dollar filed a motion to dismiss. (Doc. # 14). Plaintiff filed a brief opposing both motions. (Doc. # 18). The City and Mayor Dollar then filed a substitute brief in support of their motions to comply with the Initial Order. (Doc. # 23). Plaintiff filed a revised brief in opposition to this substitute brief. (Doc. # 32). The City and Mayor Dollar then filed a Reply. (Doc. # 34).

The Lawler Defendants also filed a motion to dismiss (Doc. # 12), after which Plaintiff filed a brief in opposition (Doc. # 19), the Lawler Defendants filed a Reply (Doc. # 26), and Plaintiff filed a rebuttal. (Doc. # 31). The Lawler Defendants filed an amended motion to dismiss to comply with the court's Initial Order (Doc. # 30), and Plaintiff filed a revised brief in opposition. (Doc. # 35). The court has reviewed this briefing and analyzes the pending motions below.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more

than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

**DISCUSSION**

This case presents a number of issues, including whether Plaintiff has standing to bring these claims, whether portions of this suit are barred by the Alabama statute of limitations for tort actions, whether these claims fail on the pleadings, and whether the dismissal of Plaintiff's previous state lawsuit bars portions of this suit through res judicata and collateral estoppel. The court analyzes each issue below.

1.      **Standing**

At the outset, the court must examine Plaintiff's standing to bring these claims. The City and Mayor Dollar have not contested whether Plaintiff has standing to bring this suit, and the Lawler Defendants only have done so in a single footnote. (*See* Doc. # 30 at 11 n.3). In contesting Plaintiff's standing, the Lawler Defendants argued that Plaintiff "cannot prove any concrete or measurable injury-in-fact he sustained as a result of any action by any defendant, and there is no specific harm which [Plaintiff] can allege." *Id.* (citing *Alabama Freethought Ass'n v. Moore*, 893 F. Supp. 1522 (1995)).

Despite the minimal briefing on standing in this case, the court is obligated to examine this issue because it is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Id.* Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. But not all disputes that might be termed "cases" or "controversies" in the colloquial sense count as Article III cases and controversies. The doctrine of standing serves to identify those disputes which qualify as Article III cases and

controversies – that is, "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiff alleges he was injured because as a taxpayer, resident, and beneficiary of a public trust, he was "deprived of the aesthetic, environmental, and recreational use of the trust property, . . . misuse of taxpayer funds used in furthering the conspiracy, and an ordinance stating the property was 'not needed' and the city could find no 'material use' for the property." (Doc. # 1 ¶ 43). Plaintiff also alleges that "[a]s a beneficiary of the trust" (*id.* ¶ 64), he "has a fractional beneficial interest in the property that the city holds in trust for public use" (*id.* ¶ 45), and that the City's actions will "deprive or otherwise diminish the beneficial interest . . . in the use of the trust property." (*Id.* ¶ 48). Relevant to this loss of use, Plaintiff alleges that he "was also a regular user of the City Harbor Park" (*id.* ¶ 15), and that the process for the 2019 transaction took place while "the Park property was still being used and maintained by the City [including] the Plaintiff and its citizens as a public park, boat dock and pier." (*Id.* ¶ 24).

Plaintiff contends there was indirect financial injury to his interests as a taxpayer when the 2019 lease required the city to build a new police storage facility that cost $400,000 (*id.* ¶ 29), when the 2023 conveyance was given to Lawler Hotels despite the fact that Wes Long offered more money for the property (*id.* ¶¶ 33-34), and when "[t]axpayer funds [were] used to further the conspiracy." (*Id.* ¶ 70).

Below, the court addresses Plaintiff's standing to bring each of his legal claims.

a.    **Due Process (Count One)**

In Count One, Plaintiff alleges that Defendants violated his substantive and procedural rights under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶¶ 41-50). Plaintiff's due process claims hinge on his allegations that the right to use and enjoy the properties was a property

or liberty right of which he was deprived, that the City misused his taxpayer funds, that the City breached its duty of trust to him, and that the City failed to comply with the state-mandated process for these land conveyances. (*Id.* ¶¶ 43, 45, 48). For the reasons discussed below, Plaintiff has standing to pursue his due process claims with one exception: he does not have standing regarding the alleged injury of misuse of taxpayer funds.

"To establish standing, as [the Supreme] Court has often stated, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Stated more succinctly, "[a] plaintiff has Article III standing only if he can demonstrate he suffered (1) an injury in fact that is both (2) fairly traceable to the defendant's conduct and (3) likely redressable by a favorable decision." *Banks v. Sec'y, Dep't of Health & Hum. Serv*s., 38 F.4th 86, 92 (11th Cir. 2022) (citing *Lujan*, 504 U.S. at 560-61).

To be sufficient to establish standing, an injury in fact must be "concrete," meaning that "the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016)). In addition to being "concrete," the injury in fact must be particularized, and actual or imminent. *Lujan*, 504 U.S. at 560-61.

i.      **Deprivation of Enjoying the Properties**

The court first considers Plaintiff's assertion that he was injured by not being able to enjoy the properties. This injury is not an intangible harm, such as a reputational or privacy harm. *See TransUnion*, 594 U.S. at 417. Instead, it involves the concrete harm of being barred from enjoying a property Plaintiff claims he has the right to visit.

This harm is also "particularized." "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). As the Supreme Court held in *Sierra Club v. Morton*, "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection." 405 U.S. 727, 734 (1972). The Supreme Court did, however, require that "the party seeking review be himself among the injured." *Id.* at 735. Plaintiff has satisfied this requirement here, alleging that he "was also a regular user of the City Harbor Park" (*id.* ¶ 15) and that the challenged land transactions "impair[] or interfere[] with the use and enjoyment of the trust property . . . as a public resource and as a free and open space accessible for fishing, boating, aesthetic, environmental, and recreational activities." (*Id.* ¶ 11). Because Plaintiff alleged he was individually and uniquely injured, he has presented a particularized injury. Finally, this specific injury is both actual and imminent, as the 2019 transaction already resulted in land development that Plaintiff alleges impairs his use of the property, and the 2023 transaction will imminently result in more development.

Further, this injury is "fairly traceable to" at least some of each of the Defendants' conduct, including the conduct of the City in leasing and conveying the land, the conduct of Mayor Dollar and Patrick Lawler as "willful participant[s] in the joint activity" (*id.* ¶ 42), the conduct of Lakeside

Investments as the entity leasing the land in 2019 and conducting development, and the conduct of Lawler Hotels as the entity purchasing the land in 2023 and planning to conduct development. Plaintiff can also establish that this injury is "likely redressable by a favorable decision," because the injunctive relief he requests would stop further development and would lead to a setting aside of the 2019 and 2023 transactions, transferring control of the property back to the City. (*See id.* at 16-17). For these reasons, Plaintiff has Article III standing to pursue his substantive due process claim regarding the injury of not being allowed to use the properties.

### ii.  Misuse of Taxpayer Funds

Plaintiff does not have standing to pursue his due process claim that the City misused his taxpayer funds. (*Id.* ¶ 43). Plaintiff's allegations specific to the misuse of taxpayer funds include the assertion that the 2019 lease required the city to build a new police storage facility at a cost of $400,000 (*id.* ¶ 29) and that the City awarded the 2023 lease to the Lawler Defendants despite the fact that Wes Long offered more money for the property. (*Id.* ¶¶ 33-34).

The Supreme Court has held that a taxpayer who wishes to challenge the spending choices of a federal agency does not have a particularized injury because it is a "generalized grievance" that is "plainly undifferentiated and 'common to all members of the public.'" *United States v. Richardson*, 418 U.S. 166, 176 (1974) (quoting *Ex parte Le vitt*, 302 U.S. 633, 634 (1937)). A taxpayer also does not have standing to challenge a federal appropriation, even though she might claim that it would "increase the burden of future taxation and thereby take her property without due process of law." *Commonwealth Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923). There is a "stringently limited exception for federal taxpayer standing" that the Supreme Court outlined in *Flast v. Cohen*. *See Richardson*, 418 U.S. at 194 (Powell, J., concurring) (discussing *Flast v. Cohen*, 392 U.S. 83 (1968)). In *Flast v. Cohen*, the Supreme Court established a two-tier test that

requires a plaintiff to show "(a) a logical link between the status as a taxpayer and the challenged legislative enactment . . . and (b) a nexus between the plaintiff's status and a specific constitutional limitation imposed on the taxing and spending power." *Id.* at 169-70 (majority) (citing *Flast*, 392 U.S. at 102-03) (quotation marks removed). The *Flast* plaintiff's standing hinged on the type of legal challenge the plaintiff made – an Establishment Clause challenge – which created a personal link to the taxpayer due to the injury that an Establishment Clause violation could work on an individual. *Flast*, 392 U.S. at 105-06.

Plaintiff asserts standing as a taxpayer to challenge the City's financial activities. But Plaintiff has not established a logical link or nexus between his status as a taxpayer and the injury caused by the City's actions. Unlike the plaintiff in *Flast*, who showed how a government's violation of the Establishment Clause created a personal religious injury for him, Plaintiff has not shown how the City's alleged violation of the Due Process Clause created an injury that was somehow personal to him as one of many taxpayers. Because of the highly limited nature of taxpayer standing in federal courts, Plaintiff faces an uphill battle to show he had standing to pursue a claim based on this injury. He has not satisfied this burden. Therefore, he lacks standing to pursue this portion of his substantive due process claim.

### iii.    Waste of Trust Assets

Plaintiff has standing to pursue his due process claim that the City wasted trust assets. (*Id.* ¶ 45). This injury is not an intangible harm, such as a reputational or privacy harm. *See TransUnion*, 594 U.S. at 417. Instead, it is the alleged monetary harm of wasting trust assets of which Plaintiff claims to be a beneficiary. Because Plaintiff has alleged a monetary harm, he has asserted a concrete injury.

Like the harm of not being able to use the City Harbor Park, this injury is also particularized, actual and imminent, fairly traceable to each of the Defendants' conduct, and likely redressable by a favorable decision. Therefore, Plaintiff has standing to pursue Count One based on the injury of waste of trust assets.

### iv.       Procedural Due Process

Plaintiff has standing to pursue his procedural due process claim that the City engaged in an improper legislative process. (*Id.* ¶ 48). Plaintiff alleges two procedural failings: that the City did not comply with Alabama Code § 35-4-410, and that it did not comply with the Alabama Constitution article IV § 94.01. Plaintiff alleges the 2019 and 2023 transactions "deprive or otherwise diminish the beneficial interest of the Plaintiff . . . in the use of the trust property" (Doc. # 1 ¶ 49), and that the resulting construction "fails to preserve the [properties] . . . either as a public resource for their equal use and enjoyment or as a free and open space accessible for use and enjoyment of boating, fishing and recreational activities." (*Id.* ¶ 50). This injury, too, is based on Plaintiff's allegation that he is not able to use the City Harbor Park post-development. For the reasons already discussed, Plaintiff has standing based on this injury. Therefore, because Plaintiff connects this injury to his procedural due process claim, he has standing to pursue this claim as well.

### b.       Equal Protection (Count Two)

In Count Two, Plaintiff claims that Defendants violated his rights to equal protection under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 51-54). Specifically, Plaintiff alleges that "Defendants have created or will create a new right or rights in the use of the [properties] . . . for the benefit of the Defendants . . . as a private entity and not for the equal and undivided beneficial interest of the Plaintiff and other citizens." (*Id.* ¶ 52). Plaintiff asserts this is

"an arbitrary and ad hoc classification that . . . both destroys the legal character of the [properties] . . . as property held for the public benefit in common and impairs the enjoyment and use of said property on an equal basis." (*Id.* ¶ 54). In simpler terms, Plaintiff argues that because the City awarded the right to use these properties to the Lawler Defendants instead of allowing this right to remain with the public, Plaintiff suffered a loss of use and value of the properties. Plaintiff has standing to pursue this equal protection claim because in his allegations he has linked the City's alleged unlawful classification to his loss of use of the properties, which has already been established as an injury for Article III standing purposes.

**c.     City's *Ultra Vires* Actions (Count Three)**

In Count Three, Plaintiff alleges that Defendants acted *ultra vires* by not complying with Alabama Code § 35-4-410 and Alabama Constitution article IV, § 94.01. (*Id.* ¶¶ 55-59).

Plaintiff has not pleaded a specific injury under this count. In fact, he only alleges that "[w]here property is owned by the City . . . the Defendants have no authority to lease, sell or otherwise dispose of any trust property without authorization [and without complying with § 35-4-410]." (*Id.* ¶ 57). Construing Plaintiff's Complaint in the light most favorable to him, the court interprets Plaintiff's Complaint to plead that he was injured by the City disposing of Plaintiff's beneficial interest in public trust property, as well as the general injury of being a citizen under a government that did not comply with required procedures, both of which resulted in his loss of use of the property.

As to both injuries, Plaintiff has standing because he has alleged he personally suffered the concrete harm of loss of use and value of the properties that resulted from the allegedly *ultra vires* actions.

#### d.        Breach of Trust (Count Four)

In Count Four, Plaintiff alleges that Defendants breached their duty as trustee to him and other members of the public who are beneficiaries of the park property, injuring him by depriving him of the use and value of the property. (*Id.* ¶¶ 60-64). As discussed above, alleging that Defendants deprived Plaintiff of his ability to use and enjoy park property where he previously enjoyed this ability is sufficient to confer Plaintiff standing, and thus he can pursue Count Four.

#### e.        Conspiracy to Interfere with Due Process Rights (Count Five)

In Count Five, Plaintiff alleges that Defendants engaged in a conspiracy to interfere with his due process rights by allowing public property to be developed by a private party for personal benefit and "by misappropriation and misuse of taxpayer funds and property." (*Id.* ¶¶ 66, 70).

The alleged injury of the City fraudulently allowing public property to be developed is sufficient to establish standing because Plaintiff links it to his deprivation of use.

The alleged injury of misappropriation and misuse of taxpayer funds and property, however, is insufficient to establish standing. As discussed above, the Supreme Court has held that a taxpayer who wishes to challenge the spending choices of a federal agency does not have a particularized injury because it is a "generalized grievance" that is "plainly undifferentiated and 'common to all members of the public.'" *United States v. Richardson*, 418 U.S. 166, 176 (1974) (quoting *Ex parte Le vitt*, 302 U.S. 633, 634 (1937)). A taxpayer also does not have standing to challenge a government appropriation, even though she might claim that it would "increase the burden of future taxation and thereby take her property without due process of law." *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923). Therefore, Plaintiff is not able to pursue Count Five based on his injuries as a taxpayer, but he may pursue Count Five based on his injury of loss of use of the properties.

16

###### f.      Fraud (Count Six)

In Count Six, Plaintiff alleges that Defendants "fraudulently joined in a conspiracy to take public property, dedicated to the public, for a private development," and he also has filed a declaratory judgment action "without any proof of a controversy." (*Id.* ¶ 73). The injury of taking public property out of Plaintiff's use where Plaintiff had been personally using the property is sufficient to confer Article III standing, so Plaintiff has standing to pursue Count Six.

However, to the extent that Plaintiff alleges he was injured by the City filing a declaratory judgment action without proof of controversy, this is insufficient to confer standing, and Plaintiff cannot pursue his fraud claim on that basis. This is so because a fraudulent filing of a declaratory judgment action against another party is not particularized to Plaintiff. Unlike the injuries that Plaintiff clearly linked to Plaintiff's loss of use of the properties, this injury constituted a procedural step that may or may not have allowed Defendants to develop the properties. Because Plaintiff does not link these events, Plaintiff does not plead why he was unique among other citizens in being injured by the City's alleged abuse of the court system. Like the taxpayers in *Richardson* and *Frothingham*, Plaintiff has failed to show anything more than a generalized grievance from this alleged injury. Because Plaintiff has not pleaded an injury that was particularized, he lacks standing to bring a fraud claim based on the injury of an allegedly fraudulent declaratory judgment action.

For these reasons, the court concludes that, when viewed in the light most favorable to Plaintiff, he has standing to pursue each of his claims on at least the theory that they are linked to his injury of personally losing enjoyment and use of the properties at issue. Plaintiff does not, however, have standing to pursue these claims based on his alleged injuries of loss of taxpayer funds and abuse of the declaratory judgment process.

17

2.      **Statute of Limitations**

The City and Mayor Dollar argue that because Plaintiff's claims are subject to a two-year limitations period, the claims that relate to the 2019 transaction are time-barred. (Doc. # 23 at 12). Plaintiff responds that the limitations period has not run on claims related to the 2019 transaction because the effect of the 2019 transaction is a "continued enforcement of an unconstitutional statute," and "actively deprive[s]" him of his "asserted constitutional rights every day that it remain[s] in effect." (Doc. # 32 at 8-9) (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F. 3d 516, 522 (6th Cir. 1997)) (alterations in original). The City and Mayor Dollar respond that the 2019 lease to Lakeside "was a discrete transactional event that occurred over five years ago," and they assert Plaintiff is legally incorrect in his argument that the effects of this transaction create an ongoing harm that tolls the limitations period. (Doc. # 34 at 6). Plaintiff's rebuttal contends that the 2019 and 2023 transactions "continue[] every day to deprive the plaintiff of his constitutional rights to liberty and property." (Doc. # 36 at 4).

The Lawler Defendants argue that Plaintiff's arguments related to Defendant Lakeside Investments and the 2019 transaction are barred by Alabama's two-year limitations period. (Doc. # 30 at 6). Plaintiff's Brief in Opposition raises the same arguments against the Lawler Defendants as those he raised against the City and Mayor Dollar. (Doc. # 35 at 8-9). These Defendants do not claim that the 2023 transaction is time-barred.

Plaintiff asserts six federal and state claims against the City, Mayor Dollar, and Lakeside Investments related to the 2019 transaction. For the reasons discussed below, all of Plaintiff's claims are subject to Alabama's two-year limitations period for personal injury actions. Thus, only Plaintiff's claims regarding the 2019 transaction are each barred.

Determining the limitations period and accrual date of a cause of action under Section 1983 involves questions of federal law, *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987), and the determination of those issues depends on the type of claim asserted. *Lewis v. City of Chicago*, 560 U.S. 205, 214 (2010). Constitutional claims brought under Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (quotation marks omitted). In Alabama, where Plaintiff brought this action, a tort action is subject to a two-year limitations period. *See* Ala. Code § 6-2-38 ("All actions for any injury to the person or rights of another not arising from contract . . . must be brought within two years."). The same two-year limitations period also applies to Plaintiff's § 1985(3) conspiracy claim. *Villalona v. Holiday Inn Express & Suites*, 824 F3d. App'x 942, 946 (11th Cir. 2020) ("Claims under § 1983 and § 1985 are governed by the statute of limitations for personal injury actions in the state in which the cause of action arose.") (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)). Finally, the same two-year limitations period also applies to Plaintiff's state law claims (*ultra vires* legislative action, breach of trust, and conspiracy to commit fraud). *See* Ala. Code § 6-2-38.

The court must address whether these claims (as they relate to the 2019 transaction) accrued in 2019, which would bar them from litigation, or later, as Plaintiff argues. Normally, the limitations period begins running when the plaintiff was injured. *See Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996). "That is, the statute of limitations begins to run when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Doe as Next Friend of Doe # 6 v. Swearingen*, 51 F.4th 1295, 1303 (11th Cir. 2022) (quoting *Rozar*, 85 F.3d at 561-62). In Alabama, "[a] cause of action 'accrues' as

soon as the party in whose favor it arises is entitled to maintain an action thereon." *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 159 (Ala. 1992) (citation omitted).

Taking each claim separately, Plaintiff's substantive and procedural due process claims would have accrued as soon as Plaintiff was entitled to maintain an action. This would have been immediately after the 2019 transaction occurred – in other words, on May 16, 2019, when the property at issue "[was] taken from the public's use . . . and leased" to Lakeside Investments. (*See* Doc. # 1 ¶ 27). Even taking into account the second 2019 lease to Lakeside Investments, which was executed on August 13, 2019, the current claims would still be barred under the two-year statute of limitations. (*See id.* ¶ 28). The same is true for Plaintiff's claims, which allege that by completing the 2019 transaction, Defendants violated Plaintiff's right to equal protection (Count Two), acted *ultra vires* (Count Three), breached their duty as trustee (Count Four), conspired in violation of Section 1985(3) (Count Five), and committed fraud under state law (Count Six). Each of these claims is premised on Plaintiff's assertion that he was injured by not being able to use the park. This claim accrued in 2019, not on some date later as Plaintiff alleges, when the park was taken out of public hands. (Doc. # 1 ¶ 27). Because Alabama's two-year limitations period applies to all of Plaintiff's claims related to the 2019 transaction, each of those claims is time-barred.

### 2. Substantive Legal Merits of the Claims

Because the claims that relate to the 2023 transaction are not time-barred, and Plaintiff has standing to pursue certain of those claims, the court now evaluates those claims on their merits. Also, for the purpose of a full analysis, the court considers the merits of the 2019 transaction despite the fact that these claims are time-barred.

### a.    Substantive Due Process (Count One)

In Count One, Plaintiff alleges that Defendants violated his substantive due process rights under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶¶ 41-50).

### i.    State Action by Lawler Defendants

The Lawler Defendants (Lakeside Investments, Inc., Lawler Hotels, LLC, and Patrick Lawler) argue that Plaintiff cannot allege a Due Process claim against them because they are not state actors. (Docs. # 26 at 8; 30 at 11). Plaintiff responds that "[j]oint participation by [Mayor] Dollar and [Patrick] Lawler is all that is required to show state action [by] Lawler. Participating in executive sessions with the city council also applies." (Doc. # 31 at 3). Plaintiff further argues that "Patrick Lawler has such a close nexus with the mayor and city council as to attend executive sessions where his project was being discussed and is a willful participant in the conspiracy, constituting state action, even forming an LLC for the Project six months before any public action was taken." (Doc. # 35 at 13).

The Lawler Defendants' state action argument applies both to the Due Process and Equal Protection claims, so the court analyzes this legal point first. A § 1983 claim may only be asserted against a state actor, not a "private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024). "This limit tracks that of the Fourteenth Amendment, which obligates *States* to honor the constitutional rights that § 1983 protects." *Id.* (emphasis in original). "[A] private entity can qualify as a state actor in a few limited circumstances – including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). By alleging that "Patrick Lawler has such a close nexus with the mayor and city council" (Doc. # 35 at 13), Plaintiff appears to

allege that the Lawler Defendants are state actors via the third pathway outlined above. Nonetheless, the court undertakes an examination of each pathway to demonstrate why the Lawler Defendants are conclusively *not* state actors.

At the outset, the court notes that there is no legal support for the idea that creating an LLC in Alabama transforms a company into a state actor. *See* Ala. Code § 10A-5A-1.04 (describing a limited liability company as merely a "separate legal entity" and not as a state actor).

Moving to Plaintiff's other theories, there is no plausible allegation in Plaintiff's Complaint that the Lawler Defendants performed an exclusively public function – either through the 2019 and 2023 transactions or through subsequent development. Examples of an exclusively public function include where "a security guard at a privately owned amusement park" had been "deputized as a sheriff of [the] County," *Lindke v. Freed*, 601 U.S. 187, at 195-96 (quoting in part *Griffin v. Maryland*, 378 U.S. 130, 132-35 (1964)), where a private company owns and operates a "company town," *Marsh v. Alabama*, 326 U.S. 501, 502-03 (1946), or where a private organization conducts primary elections (an "exclusively public function"). *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (discussing and citing, among other cases, *Terry v. Adams*, 345 U.S. 461 (1953)). There are no facts alleged by Plaintiff indicating that the Lawler Defendants hired any City or other government police officers to regulate the Harbor development. *See Griffin*, 378 U.S. at 132-35. And Plaintiff does not allege that City Harbor Development was anything like the company town in *Marsh*, where a private company employed a county sheriff, paved streets and sidewalks, and operated a sewage system. *See Marsh*, 326 U.S. at 502-03. Similarly, running "bars, restaurants, cigar bar, condos, and a brewery" (Doc. # 1 ¶ 21) is unlike the exclusively government function of running an election. *See Terry*, 345 U.S. at 470. Finally, negotiating a real estate transaction is not an exclusive public function; indeed, private individuals do this type of

negotiation every day when buying a house or leasing an apartment. Therefore, Plaintiff has not plausibly alleged that the Lawler Defendants are state actors by virtue of performing an exclusively public function.

The Lawler Defendants are also not public actors by virtue of being compelled by the City or other government to perform a particular action. Plaintiff has not alleged any facts supporting a theory like this, and instead describes two real estate transactions by which the Lawler Defendants freely decided to enter into a contract and begin commercial development. There are no allegations that any government compelled the Lawler Defendants to take either of these actions. Therefore, the Lawler Defendants are not state actors by virtue of being compelled by a government.

Finally, the Lawler Defendants are not public actors by virtue of acting jointly with the government. Examples of this type of state action include where a restaurant "jointly engaged with state officials" by conspiring with a policeman to unlawfully arrest a patron, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152-53 (1970), or where a city served as trustee of a private organization that segregated based on race, *Commonwealth of Pa. v. Bd. of Directors of City Trusts of Philadelphia*, 353 U.S. 230 (1957). The question in this line of cases is not whether *private* defendants took actions to engage in joint action with the state, but instead "where the state has so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1278 (11th Cir. 2003) (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001)) (cleaned up). For the Lawler Defendants to be state actors under this joint-engagement test, the City would need to have inserted itself into a position of "interdependence" with the Lawler Defendants (for example, by conspiring to use their police officers to carry out unlawful arrests at the private development, or by serving on the Lawler Defendants' boards of trustees). Plaintiff

does not allege that the City took any of these actions. Plaintiff instead alleges that the Lawler Defendants attended executive sessions of the City council. However, this does not move the needle because this was an action taken by a private party (not the state) for the purpose of negotiating private real estate transactions. (Doc. # 1 ¶ 42) (alleging Patrick Lawler attended "executive sessions of the council where his project was being debated"). Unlike a policeman arresting a restaurant patron, a city council allowing a private party to attending executive sessions to negotiate real estate transactions does not insert the City into a position of interdependence with the Lawler Defendants. Instead, it simply allows the City to negotiate a real estate transaction with a private party.

Plaintiff has not plausibly alleged that the Lawler Defendants were engaged in state action, and therefore they are not proper defendants under Plaintiff's Section 1983 claims.

### ii.    Allegations Against the City and Mayor Dollar

Plaintiff alleges that the City and Mayor Dollar deprived him of his property or liberty right to use and enjoy the properties at issue, and that the City breached its duty of trust to him by depriving him of this use and enjoyment. (Doc. # 1 ¶¶ 43, 45). The City and Mayor Dollar argue that Plaintiff's alleged right is "at most" a "state-created property right as opposed to a fundamental right created by the federal constitution," and that under Eleventh Circuit case law, the City's actions are subject only to rational basis review. (Doc. # 23 at 13). Plaintiff responds that the rights to "public use [of] property" are "guaranteed by the 14th Amendment" and that the development project "does not serve a legitimate government purpose." (Doc. # 32 at 13-14). The City and Mayor Dollar reply that "plaintiff does not disagree that the City's alienation of the Public Properties for the commercial development of City Harbor is subject only to rational basis review." (Doc. # 34 at 7). They also argue that, on the face of Plaintiff's complaint, there were sufficient

economic and social justifications for the project and Plaintiff has not cited any legal authority to support his position. (*Id.*).

"The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' without the due process of law. *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). "The Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc)). "A violation of either of these two kinds of protection may form the basis for a suit under § 1983." *Id.*

A court considering a substantive due process claim must first consider whether a plaintiff has sufficiently asserted a constitutionally protected property or liberty interest. *See, e.g.*, *Doe v. Kearney*, 329 F.3d 1286, 1293 (11th Cir. 2003) (noting that parents have a fundamental liberty interest in care of their children). The Supreme Court has recognized that a fundamental liberty interest includes any "specific freedoms protected by the Bill of Rights" as well as the right to marry, to have children, to direct the education of one's children, to marital privacy, and to use contraception. *Washington v. Glucksberg*, 521 U.S. 702 at 719-20 (1997) (citing a string of cases). Although there may be rights and liberties beyond this list, federal courts limit expansion of the list to rights that are "deeply rooted in this Nation's history and tradition," *id.* at 720-21 (quoting *Moore v. City of East Cleveland, Ohio*, 431 U.S. 949, 503 (1977)), and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrified." *Id.* at 721 (internal quotations omitted). These rights must be accompanied by "a careful description of the asserted fundamental liberty interest." *Id.* (quoting in part *Reno v. Flores*, 507 U.S. 292, 302 (1993)) (internal quotation marks omitted).

Plaintiff alleges that Defendants deprived him of the right to use and enjoy the properties at issue, and thereby breached their duty of trust to him. (Doc. # 1 ¶¶ 43, 45). Neither of these alleged rights (the right to use or the right of a trust beneficiary in a public park) are a fundamental liberty interest. Plaintiff does not (and cannot) allege that these rights are in the Bill of Rights to the United States Constitution. This means that to be a "fundamental" right entitled to strict scrutiny under the Due Process Clause, the rights must be among the rights already recognized by federal courts, or it must pass the *Glucksberg* test laid out above.

There is no support for the idea that those rights Plaintiff claims were violated are within the fundamental liberty interests already recognized by federal courts. For example, the right to use publicly owned property or be a beneficiary to a public trust consisting of this property is not synonymous with the right to marry, have children, direct the upbringing of one's children, or to marital privacy, to name a few.

Nor is there any support for the idea that these rights are eligible for addition to the list of fundamental liberty interests entitled to strict scrutiny. Plaintiff has not offered any legal arguments to suggest that these rights are "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 721. These rights are not fundamental liberty interests, which would trigger strict scrutiny review here.

It is also clear that the rights Plaintiff asserts are also not property interests that would receive strict scrutiny review. "Ordinarily, the substantive component of the Fourteenth Amendment's Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty." *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1283 (11th Cir. 2021) (internal quotations omitted). "Garden-variety property rights do

not meet this standard and thus, as a general proposition, their deprivation does not in and of itself concern the concept of ordered liberty." *Id.* at 1284. Such "state-created rights" receive only the protection against "arbitrary and irrational government action." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279-80 (11th Cir. 2014). In other words, "state-created rights" receive rational basis review. *Id.* at 1280. Plaintiff's asserted property interests in the ability to use public property and benefit from the public trust in that property are, as the City and Mayor Dollar contend, state-created property rights. As such, the Defendants' alleged deprivation of these rights is subject to rational basis review.

Applying rational basis review to this alleged deprivation, Plaintiff's challenge fails to assert a plausible legal claim. To pass rational basis review, the "challenged provision need only be rationally related to a legitimate government purpose." *Schwarz v. Kogan*, 132 F.3d 1387, 1390-91 (11th Cir. 1998). "This standard is easily met." *Leib v. Hillsborough Cnty. Public Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). As the Supreme Court has held, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). "Rather, a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Leib*, 558 F.3d at 1306. Plaintiff has the burden here to negate every conceivable basis that might support the 2019 and 2023 transactions. He has not satisfied this burden.

Plaintiff alleges that the disposition of the properties "has no foundation in reason and is merely an arbitrary or irrational exercise of power having no substantial relation to the public health, morals, safety, or the public welfare." (Doc. # 1 ¶ 44). Plaintiff does not offer any details as to why this disposition was arbitrary or irrational, or why it had no relation to a legitimate

government interest. Elsewhere in the Complaint, Plaintiff's relevant allegations include that the disposition "will conflict with the purpose of the trust" (*id.* ¶ 9), that the City conveyed the property while it "was still being used and maintained by the City . . . as a public park, boat dock and pier" (*id.* ¶ 24), that the City conveyed the property while it "was still being used by the city for police storage and shop" (*id.* ¶ 26), and that the City "refused to consider" a higher offer to purchase the property (*id.* ¶ 33-34). These allegations do not negate other conceivable bases that might support the City's actions, including that the development was awarded to the most trustworthy developer, and is expected to increase tourism, tax dollars, and the aesthetics of the City Harbor. Because Plaintiff has failed to plead facts that satisfy his burden to show why the 2019 and 2023 transactions fail to survive rational basis review, his substantive due process claim fails on the merits.

      **b.**     **Procedural Due Process (Count One)**

Plaintiff has also alleged a procedural due process claim. (*Id.* ¶¶ 41-50). He claims that the City did not comply with Alabama Code § 35-4-410 or the Alabama Constitution article IV § 94.01. The specific injury Plaintiff alleges is that the 2019 and 2023 transactions "deprive or otherwise diminish the beneficial interest of the Plaintiff . . . in the use of the trust property" (Doc. # 1 ¶ 49), and that the resulting construction "fails to preserve the [properties] . . . either as a public resource for their equal use and enjoyment or as a free and open space accessible for use and enjoyment of boating, fishing and recreational activities." (*Id.* ¶ 50). Even read in the light most favorable to Plaintiff, this fails to state a claim.

If a legislature has complied with the required legislative process, a plaintiff may not challenge the resulting legislative act because an individual is "not entitled to procedural due process above and beyond that which is already provided by the legislative process." *75 Acres,*

*LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1293 (11th Cir. 2003). Because there is no injury where a legislature's procedure complies with required procedure, the relevant question as to whether Plaintiff may challenge the 2019 and 2023 transactions as they relate to procedural compliance is whether this procedure was that "provided by the legislative process." *Id.*

Plaintiff argues that the City acted "without compl[ying] with Ala. Code §35-4-410 and/or Ala. Const. of 1901, Art. IV, §94.01," and thus violated his rights under the due process clause. (Doc. # 1 ¶ 48). As noted above, Plaintiff's claim regarding the 2019 transaction is time-barred. And, as discussed below, under the principles of res judicata and collateral estoppel, the legality the City's actions pertaining to the 2019 transaction has already been settled. But even absent this application of the statute of limitations and the principles of res judicata and collateral estoppel, Plaintiff's procedural due process claim fails on its merits.

The Alabama Supreme Court has held that the 2019 transaction needed to (and did) comply only with § 94.01. (Doc. # 25-3 at 40). Specifically, the Alabama Supreme Court held that a constitutional amendment such as that which produced § 94.01 overrides a conflicting statute such as Alabama Code § 35-4-410. (*Id.*). Even without applying res judicata or collateral estoppel here, this holding is an interpretation of Alabama law by Alabama's highest court, and thus becomes the controlling interpretation of Alabama state law in this court. Therefore, this court notes that § 94.01 overrides § 35-4-410 where they conflict (such as here).

Section 94.01 is the controlling law. Plaintiff cannot plausibly allege that the 2019 transaction violated his procedural due process rights. The procedural requirements with which the City complied in 2019 included giving "sufficient advance public notice of the public meetings at which it considered the development lease and the development agreement," as well as approving "at those meetings . . . resolutions determining that the development lease 'will serve a valid and

sufficient public purpose, notwithstanding any incidental benefit accruing to any private entity or entities.'" (Doc. # 25-3 at 17) (quoting in part § 94.01(c)(1)). Section 94.01 only requires notice "[a]t least seven days prior to the public meeting . . . published in a newspaper having the largest circulation in the county . . . describing in reasonable detail the action proposed to be taken." Ala. Const. art. IV, § 94.01(c)(2). Plaintiff acknowledges that the City did so, issuing "a legal ad in the Advertiser-Gleam paper notifying the public of a proposed resolution" on June 6, 2018 (Doc. # 1 ¶ 21), which was twelve days before the council meeting on June 18 at which the City "presented a Project Development Agreement" and voted to approve it. (*Id.* ¶ 22). Twelve days is more than the required seven days, and Plaintiff does not allege that the City failed to comply with this required procedure.

Plaintiff has not alleged that the City did not include language in its 2019 resolution specifying that it would "serve a valid and sufficient public purpose, notwithstanding any incidental benefit accruing to any private entity or entities." (*See* Doc. # 25-3 at 17) (quoting § 94.01(c)(1)). Indeed, Plaintiff attached language from the 2019 resolution that stated "[t]he City hereby determines that the lease of the Site to the Company . . . is [in] the public interest." (Doc. # 1-5 at 4). And Plaintiff does not allege that the City failed to use the property for a permitted purpose under § 94.01. The permitted purpose of the 2019 transaction was that of "constructing, [or] developing . . . commercial . . . facilities of any kind." (Doc. # 25-3 at 18) (quoting in part § 94.01(a)(2)). Section 94.01 allows the City to lease or sell property for "the purpose of . . . developing . . . commercial . . . facilities of any kind." Ala. Const. art. IV, § 94.01(a)(2). Because Plaintiff cannot plausibly allege that the 2019 transaction did not comply with required procedures, he has not stated a due process claim cannot stand as it relates to the 2019 transaction.

Based on this same logic, Plaintiff also has not plausibly alleged that the 2023 transaction violated his procedural due process.

First, Plaintiff has not alleged that the City did not give "sufficient advance public notice fo the public meetings" at which it considered the 2023 conveyance (*see* Doc. # 25-3 at 17); instead, he alleges that on May 25, 2022 the City published an article giving notice of the City's intent to sell property to the Lawler Defendants. (Doc. # 1 ¶ 31). Plaintiff also alleges that "a legal notice was given" on June 1, 2022 that the City would consider a resolution to sell property to the Lawler Defendants at its June 20, 2022 meeting (which it did). (*Id.* ¶ 32). But, § 94.01 only requires notice "[a]t least seven days prior to the public meeting . . . published in a newspaper having the largest circulation in the county . . . describing in reasonable detail the action proposed to be taken." Ala. Const. art. IV, § 94.01(c)(2). Plaintiff cannot plausibly allege that where the the relevant statute requires only seven days' notice, a public notice given nineteen days before a meeting was not sufficiently in advance of the meeting.

Second, Plaintiff has not alleged that the City did not include language in its resolution specifying that it would "serve a valid and sufficient public purpose, notwithstanding any incidental benefit accruing to any private entity or entities." (*See* Doc. # 25-3 at 17) (quoting § 94.01(c)(1)). Plaintiff did not attach the language from the City ordinance selling the land, nor did he attach language from the May 25 article or June 1 legal notice. (*See generally* Doc. # 1). Plaintiff's only arguments that the development did not serve a "legitimate public purpose" were in responsive briefings, and even then he offered no factual allegations supporting these claims. (Docs. # 31 at 6; 32 at 12, 14, 17; 35 at 12, 16). In fact, Plaintiff implies that the ordinance authorizing the 2023 sale *did* include a "declaration of a 'public purpose'" (Doc. # 35 ¶ 6), arguing

that the development "defeats the public purpose of promoting the health, safety, morals, and general welfare of the citizens." (*Id.* at 16).

Because Plaintiff has not presented any factual allegations that plausibly assert a claim that the City failed to comply with the procedural requirements of § 94.01 through the 2023 transaction, the next question is whether the purpose of selling the land to the Lawler Defendants for hotel development is permissible. Just as the purpose of leasing the land to Lakeside Investments in 2019 was permissible, the purpose of selling the land to Lawler Hotels in 2023 was permissible. Specifically, the 2019 purpose was permissible as "constructing, [or] developing . . . commercial . . . facilities of any kind." (Doc. # 25-3 at 18) (quoting in part § 94.01(a)(2)). The only differences between the 2019 and 2023 transactions were in the result of commercial development (bars, restaurants, and condos in 2019 versus a hotel in 2023) and in the form of the transaction (lease in 2019 versus sale in 2023). A hotel is a commercial facility, just as are bars, restaurants, and condos. And § 94.01(a)(2) permits a municipality to "[l]ease, *sell*, grant, exchange, or otherwise convey" property. § 94.01(a)(2) (emphasis added). Therefore, like the 2019 transaction, the 2023 transaction complied with required legislative procedure. Plaintiff thus has not plausibly alleged that Defendants violated his procedural due process rights.

### c.    Equal Protection (Count Two)

In Count Two, Plaintiff alleges that Defendants violated his rights to equal protection under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 51-54). Specifically, Plaintiff alleges that "Defendants have created or will create a new right or rights in the use of the [properties] . . . for the benefit of the Defendants . . . as a private entity and not for the equal and undivided beneficial interest of the Plaintiff and other citizens." (*Id.* ¶ 52). Plaintiff alleges this is "an arbitrary and ad hoc classification that . . . both destroys the legal character of the [properties]

. . . as property held for the public benefit in common and impairs the enjoyment and use of said property on an equal basis." (*Id.* ¶ 54). In simpler terms, Plaintiff argues that because the City awarded the right to use these properties to the Lawler Defendants instead of allowing this right to remain with the public, Plaintiff suffered a loss of use and value of the properties.

As discussed above, the Lawler Defendants are not state actors for the purposes of Plaintiff's Section 1983 claims, so Plaintiff's Equal Protection claim can only proceed against the City and Mayor Dollar.

The City and Mayor Dollar argue that Plaintiff cannot allege an equal protection violation where he was not "similarly situated" to the Lawler Defendants as a private real estate developer. (Doc. # 23 at 20). They also argue that even if Plaintiff could show that there was discrimination, he has failed to plausibly allege that the City engaged in a suspect classification or in a classification that affected his fundamental rights. (*Id.* at 21).

The Equal Protection Clause was enacted in the aftermath of the Civil War to eliminate discrimination based on "differences of race, of color, or of nationality." *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). Among other things, the Equal Protection Clause restricts how governments may discriminate between parties when awarding a government benefit. *See Adarand Constructors, Inc. v.* Pena, 515 U.S. 200, 223 (1995) (applying strict scrutiny to such discrimination when based on race). But Plaintiff's allegations are insufficient to show that the City discriminated against him at all.

Construed in the light most favorable to the him, in his equal protection claim, Plaintiff alleges he is injured by no longer being able to enjoy the government benefit of visiting or enjoying public properties as a result of the City engaging in an arbitrary classification in favor of a private party (the Lawler Defendants). As best the court can tell, the theory is this: but for the City's

arbitrary decision to award two contracts to the Lawler Defendants, no development would have occurred and Plaintiff would still enjoy the full use of the properties. However, properly understood, an equal protection analysis does not consider whether the decision to award a contract *at all* was somehow arbitrary; instead, the question is whether the decision discriminated between classes of parties when awarding a government benefit. The City and Mayor Dollar correctly characterize this as a "class of one" equal protection claim, meaning that Plaintiff is claiming that he individually was discriminated against. *See Griffin Industries, Inc. v. Irvin*, 469 F.3d 1180, 1203 (11th Cir. 2007). Under such a "class of one" claim, Plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be similarly situated means a Plaintiff is "similarly situated *in all relevant respects*." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316-19 (11th Cir. 2003) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997)) (emphasis in original). But Plaintiff does not and cannot allege that he was similarly situated in all relevant respects to the Lawler Defendnats.

Based on Plaintiff's allegations, the government benefit awarded to the Lawler Defendants was the "new right" to "use" the properties for private development. (Doc. # 1 ¶ 52). Plaintiff does not allege that he ever bid on this development project, and indeed this would be unlikely because Plaintiff appears opposed to any commercial development of these properties. (*See* Doc. # 1 ¶ 24) (describing how Plaintiff previously used the property as a "public park, boat dock and pier"). Therefore, in awarding a bid to the Lawler Defendants, the City was not discriminating against Plaintiff in a way that would allow Plaintiff to pursue a "class of one" discrimination claim.

Further, even if Plaintiff had sufficiently alleged such a "class of one" claim, he would be required to show that there was "no rational basis for the difference in treatment." *Griffin*, 496

F.3d at 1207. But Plaintiff's attachment to his Complaint indicates that in a public council meeting the City offered several rational reasons for selecting the Lawler Defendants, including that the Lawler Defendants were a "proven developer" that had not pulled out of the deal even though other developers had, and that the contract terms the Lawler Defendants offered to the City were uniquely favorable to the City. (Doc. # 1-11 at 3-4). A bald allegation that the City's choice of the Lawler Defendants was "arbitrary and ad hoc" (Doc. # 1 ¶ 53) is not enough to plausibly allege a class of one claim.

Even if Plaintiff could be construed as asserting a race-based or rights-based Equal Protection claim, he has failed to sufficiently plead this claim. The Equal Protection Clause imposes a strict scrutiny standard of review to government classifications that classify based on a suspect characteristic (race, color, or nationality) or that classify in some other manner which affects a fundamental right (such as the right to vote or the right to interstate travel). *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 206-07 (2023) (outlining strict scrutiny standard); *Dunn v. Blumstein*, 405 U.S. 330 (1972) (holding the right to vote as a fundamental right); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (holding the right to interstate travel as a fundamental right). Where government classifications do neither of these things, they are subject only to rational basis review, which is an exceedingly minimal level of scrutiny.

Plaintiff neither alleges that he was the subject of a race-based classification, nor that some other classification affected his fundamental rights. Plaintiff merely alleges that the City enacted an "arbitrary and ad hoc classification" by engaging in the 2019 and 2023 transactions with a private entity. (Doc. # 1 ¶ 53). First, Plaintiff does not allege that anything about the City's contract award to the Lawler Defendants was race-based. Further, there is no fundamental right to have

access to a public park or other public property. It makes no difference that Plaintiff pleads that

Defendants "created . . . a new right or rights in the use of the [properties]" (*id.* ¶ 52), because

Plaintiff's pleading does not establish that this is a fundamental right under the Equal Protection

Clause. Indeed, the Supreme Court has only recognized a short list of fundamental rights under

the Equal Protection Clause, including the right to vote and the right to interstate travel. *See Dunn*

*v. Blumstein*, 405 U.S. 330 (1972) (right to vote); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (right

to interstate travel). Plaintiff does not allege any facts that show that the right to access and use a

public park is similar to either of these rights, nor does he explain why the right to access or use a

public park should be added to the short list of fundamental rights recognized under equal

protection jurisprudence. This means that even if Plaintiff could show that the City discriminated

against him (and, to be clear, he has not), he would need to plausibly allege that the City's actions

do not pass scrutiny under rational basis review. And as discussed above, Plaintiff has not plausibly

alleged this. On these bases, Plaintiff has failed to plead facts that would plausibly establish an

equal protection claim.

### d.    City's *Ultra Vires* Actions (Count Three)

In Count Three, Plaintiff alleges that Defendants acted *ultra vires* by not complying with

Alabama Code § 35-4-410 and Alabama Constitution article IV, § 94.01. (*Id.* ¶¶ 55-59).

Plaintiff specifically alleges that "[w]here property is owned by the City . . . the Defendants

have no authority to lease, sell or otherwise dispose of any trust property without authorization

[and without complying with § 35-4-410]." (*Id.* ¶ 57). As discussed in connection with the

procedural due process analysis above, the City complied with the relevant process and acted under

the authority of § 94.01 in both the 2019 and 2023 transactions. Further, as discussed below

regarding the doctrines of res judicata and collateral estoppel, the legality of the 2019 transaction

has been settled and the relevant fact issues that establish the legality of the 2023 transaction have been decided. For all these reasons, Defendants did not act *ultra vires* and this claim is without merit.

### e.      Breach of Trust (Count Four)

In Count Four, Plaintiff alleges that Defendants breached their duty as trustee to him and other members of the public who are beneficiaries of the park property. (*Id.* ¶¶ 60-64). Plaintiff does not cite any state statutes or case law to support his position that he was a beneficiary of a public trust consisting of the properties at issue in this case (and there has been no reference to any written trust-creating documents). To support this claim, Plaintiff cites Alabama Code § 35-4-410, which does not use the term "trust" and does not refer to the associated body of trust law. (*See* Doc. # 32 at 14). This statute instead authorizes governing bodies of cities in Alabama to "alienate public parks and playgrounds, other public recreational facilities and public housing projects" as long as this is first approved by a majority of voters in the city. Ala. Code § 35-4-410. However, as discussed at length above, § 94.01 overrides § 35-4-410 and therefore this claim is without merit.

Plaintiff also cites a Supreme Court case, *Sierra Club v. Morton*, for the proposition that "depriving Plaintiff of his constitutional right to liberty, and property held in trust for the citizens['] aesthetic, environmental, and recreational use, [is] a constitutionally protected interest." (Doc. # 32 at 16; *see also* Doc. # 35 at 16). *Sierra Club* does not, however, establish that Plaintiff could claim to be a beneficiary of a public trust in the form of the Guntersville City Harbor. The most the decision says about trusts is that the United States Forest Service "is entrusted with the maintenance and administration of national forests," 405 U.S. 727, 729 (1972), and that the Department of the Interior "is entrusted with the preservation and maintenance of the national

parks." *Id.* Instead, as discussed relevant to Plaintiff's standing, *Sierra Club* is more appropriately cited to establish that loss of enjoyment of an environmental benefit could be an injury for purposes of Article III standing.

Additionally, based on the court's independent research, the idea that a city park automatically becomes part of a public trust is unsupported in Alabama case law. Although the Alabama Supreme Court has recognized that a city's public streets are held "in trust for its citizens and the public generally," there is no corresponding case law about parks, and parks are of a different character than streets. *Birminghamm Belt R. Co. v. City of Birmingham*, 101 So. 599, 675 (Ala. 1924) (citing *Webb v. City of Demopolis*, 13 So. 289 (Ala. 1892)). And, in considering a similar case in which abutting property owners challenged a city's conveyance of undeveloped property, the Alabama Supreme Court rejected plaintiffs' theory that this property was "subject to a trust that it be used, kept and owned as a park." *Vestavia Hills Bd of Educ. v. Utz*, 530 So. 2d 1378, 1388 (Ala. 1988).

Considering Plaintiff's failure to cite to any material legal support for his breach of trust claim, and the court's firm conclusion that this concept has no support in Alabama case law, Plaintiff cannot show that he has suffered any cognizable legal injury through a breach of trust.

### f.   Conspiracy to Interfere with Due Process Rights (Count Five)

In Count Five, Plaintiff alleges that under Section 1985(3), Defendants engaged in a conspiracy to interfere with his due process rights by allowing public property to be developed by a private party for personal benefit and "by misappropriation and misuse of taxpayer funds and property." (*Id.* ¶¶ 66, 70).

First, for the reasons explained earlier, Plaintiff has no standing to assert a claim based on the injury of misuse of taxpayer funds and property.

Second, as to Plaintiff's alleged injury of no longer being able to use the properties, in order to allege a Section 1985(3) claim on this basis, Plaintiff "must satisfy four requirements." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021). These include that a defendant "(1) conspired or [went] in disguise on the highway or on the premises of another, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) taken or caused an action to be taken in furtherance of the conspiracy's object, and (4) injured an individual's person or property or deprived her of exercising any right or privilege of a United States citizen." *Id.* at 1255 n.8 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

Plaintiff's claim fails the second requirement. The Supreme Court has held that this element of a 1985(3) claim requires a plaintiff to allege *at least* that a defendant had "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). As already discussed regarding his equal protection claim, Plaintiff does not allege any race-based discriminatory animus. Plaintiff also includes no allegations suggesting that any of the Defendants acted with class-based, invidiously discriminatory animus. Indeed, Plaintiff's allegations on this count only detail how Defendants agreed to sell or lease the properties "in contravention of the trust" (Doc. # 1 ¶ 66), "for a nominal value and in contravention of applicable law" (*id.* ¶ 67), "in violation of Alabama Constitution and Ala. Code §35-4-410" (*id.* ¶ 69), and that these actions caused Plaintiff to "suffer[] the loss of the . . . use of the [properties]." (*Id.* ¶ 71). Without more, these facts simply do not show any discriminatory animus; indeed, Plaintiff does not even explicitly allege any such animus existed. (*See Id.* ¶¶ 65-71) (lacking any reference to discrimination or animus). Because Plaintiff has failed

to sufficiently plead at least one required element of a Section 1985(3) claim, he cannot proceed on Count Five.

### g.    Fraud (Count Six)

In Count Six, Plaintiff alleges that Defendants "fraudulently joined in a conspiracy to take public property, dedicated to the public, for a private development," and also filed a declaratory judgment action "without any proof of a controversy." (*Id.* ¶ 73). Federal Rule of Civil Procedure 9 requires a heightened level of pleading for fraud allegations, explaining "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). And, under Alabama law, a fraud claim requires pleading: "(1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation." *Coastal Concrete Co. v. Patterson*, 501 So. 2d 824, 826 (Ala. 1987) (internal citation omitted).

First, Plaintiff fails to plead with particularity that Defendants made any false representations. He merely recounts that the City filed a declaratory judgment "without any proof of a controversy," and that the City claimed they could find "no material use" for the properties even though they were "being used for a public park and pier . . . [and] for police storage and maintenance . . . [as well as] a public amphitheater." (Doc. # 1 ¶¶ 73-74). But Plaintiff does not specify how there was no "proof of controversy" as to the declaratory judgment action. And, in actuality, it appears there was controversy because the City had used eminent domain against CSX Railroad under the premise that it was for the purpose of "constructing [a] public boat dock and a public recreational park." (*Id.* ¶ 16). CSX Railroad was an adverse party to the City because a declaratory judgment that would clarify that the property could now be used "for any lawful use, without restriction" could be against the interests of CSX Railroad, who might otherwise desire to

buy the property back. Further, Plaintiff does not specify how claiming "no material use" for the properties is a false representation. Simply because the properties were still being put to another use by the public does not mean that they have a material use to the City. Especially in the light of the requirement that Plaintiff must plead fraud with particularity, he has utterly failed to sufficiently plead that Defendants made any false representations.

Second, Plaintiff cannot show that he relied on any allegedly false representations by Defendants. Even assuming that Plaintiff had pleaded with sufficient particularity that Defendants had made false representations through the declaratory judgment action and through the declaration that the properties were without material use (and, to be clear, he has not done so), he has not alleged how he relied on those representations. For example, Plaintiff has not claimed that he had purchased property near these properties in reliance on the representation that it was without material use to the City. In the absence of any allegation of Plaintiff's reliance on Defendants' representations, Plaintiff also has failed to plead this second required element of a fraud claim.

### 3.     Res Judicata

The City and Mayor Dollar argue that res judicata precludes Plaintiff's claims against them as they relate to the properties leased to Lakeside Investments in 2019. (Doc. # 23 at 9-10). The court notes, once again, that these 2019 claims have already been determined to be barred by the statute of limitations. But, for purposes of a comprehensive analysis, the court also analyzes why they are also barred by res judicata. Specifically, the City and Mayor Dollar argue that Plaintiff's state court case, *Kennamer v. City of Guntersville et al.*, 50-cv-2019-900208 (Circ. Ct. Marshall Cnty., Ala. May 9, 2019), involved a prior judgment on the merits by a court of competent jurisdiction with substantial identity of parties and the same cause of action. They contend this bars Plaintiff from retrying the claims relating to the public properties leased in 2019. (*Id.*).

Plaintiff responds that "[t]his case is neither the same subject nor the same cause of action as the state court case," because he is not arguing that "Amendment 772" (Alabama Constitution article IV, § 94.01) does not authorize the City to lease public property for retail, and that he is not attempting to overturn a state court judgment. (Doc. # 32 at 9). Plaintiff also highlights that his legal claims are different in the instant case because they include a federal due process right as well as Alabama Code § 35-4-410, which the state court had held was "irrelevant" to the previous case. (*Id.* at 9-10).[2] The City and Mayor Dollar filed a Reply Brief arguing that the difference in legal claims is irrelevant, and that the same "substantial evidence" for Plaintiff's claims in the first state court action would support Plaintiff's claims in the instant action. (Doc. # 34 at 4). Plaintiff's rebuttal argues that his current lawsuit presents claims independent from those in the previous suit, arguing that the City and Mayor Dollar failed to comply with § 94.01 and Ala. Code § 35-4-410, and that they gave a direct benefit to a private party in violation of state law. (Doc. # 36 at 3-4).

Res judicata is a doctrine that bars a party from asserting a claim that they have already litigated or had an opportunity to litigate. Federal courts apply state law when considering a defense of res judicata, *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990), and in Alabama, the elements of res judicata are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 635 (Ala. 1998).

---

[2] Plaintiff also argues that *Rooker-Feldman* abstention is not required here because he is not asking for a review of the prior state court decision in this federal action. (Docs. # 32 at 10; 36 at 3). None of the Defendants raised a *Rooker-Feldman* abstention issue, and it is inapplicable here, as Plaintiff is not challenging the prior state court decision. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (noting that the *Rooker-Feldman* doctrine "makes clear that federal district courts cannot review state-court final judgments because that task is reserved for state appellate courts, or, as a last resort, the United States Supreme Court"). Because it has not been raised here, the court does not give this issue extensive analysis.

In Alabama, a dismissal with prejudice is an adjudication on the merits, satisfying the first element of res judicata. *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933, 935 (Ala. 1995); *Hammermill Paper Co. v. Montreal Boyette Sandlin Day*, 336 So. 2d 166, 168 (Ala. 1976). Plaintiff does not contest that the Circuit Court of Marshall County was a court of competent jurisdiction, which entertained Plaintiff's state law claims and dismissed them with prejudice. (Doc. # 25-2 at 4). On appeal, the Alabama Supreme Court affirmed this final judgment. (Doc. # 25-3 at 3). This satisfies the first and second elements of res judicata.

As to the third element – substantial identity of the parties – both the City and Mayor Dollar were defendants in the previous state action filed by Plaintiff. (Doc. # 25-2 at 1). As to the Lawler Defendants, however, this element is only satisfied for Lakeside Investments. The "substantial identity of the parties" requires that the parties be the same or have been in privity with parties in a previous suit. Patrick Lawler and Lawler Hotels, LLC do not argue that they were the same as any parties sued by Plaintiff in the previous state court action or that they were in privity with the parties that were sued. (*See* Docs. # 12, 26, 30). Indeed, the only res judicata reference by the Lawler Defendants is found in a sub-heading in their first and Amended Motions to Dismiss (Docs. # 12 at 5-7; 30 at 8). Therefore, there is no indication that Patrick Lawler and Lawler Hotels, LLC can show that they were the same parties or were in privity with the parties who Plaintiff sued in the previous state court action; therefore, they cannot claim that Plaintiff's claims against them are barred by res judicata.

As to the City, Mayor Dollar, and Lakeside Investments, the remaining question is whether the fourth element of res judicata, that the same cause of action was presented in both actions, is satisfied. These Defendants argue that the court must apply the "substantial evidence" test to determine whether the same cause of action is presented in two cases. (Doc. # 23 at 10) (citing

*Kizzire v. Baptist Health System, Inc.*, 441 F.3d 1306, 1309 (11th Cir. 2006)). The court agrees that this is the correct test under Alabama law. *See City of Trussville v. Personnel Bd. of Jefferson Cnty.*, 365 So. 3d 322, 330 (Ala. 2022) (applying the substantial evidence test in analyzing the fourth element of res judicata). This test asks "whether substantially the same evidence would support a recovery in both actions." *Equity Resources Management, Inc. v. Vinson*, 723 So. 2d 634, 637 (Ala. 1998) (citing string of Alabama Supreme Court cases). As related to this test, the *Vinson* court noted that although "the plaintiff's presentation of alternative legal theories in a second action can be a factor . . . this Court has made it very clear that the determinative inquiry is whether the claims in both actions arise out of, and are subject to proof by, the same evidence." *Id.* (internal citations omitted).

An example of a case in which the substantial evidence test would *not* bar a subsequent action through res judicata is where a landowner sued a neighbor over their boundary lines, obtained a final judgment, and later sued for an easement by necessity over this property. Because these claims "require different evidence," res judicata did not apply. *Vaughan v. Barr*, 600 So. 2d 994, 996 (Ala. 1992). Similarly, where plaintiffs sued to claim they had an equitable right to redeem property the defendant bought in a foreclosure sale, they were not barred from later suing the same defendant for intentionally interfering with a contract after plaintiffs had transferred the title to this property to a third party. *Croft v. Pate*, 585 So. 2d 799, 801 (Ala. 1991). This was because the first case was about the plaintiffs' right to redeem the property, which required a review of the deed and the applicable Alabama statute, while the second case was about the existence of a contractual relationship between plaintiffs and a third party and whether defendant had interfered with it, which required reviewing different evidence. *Id.* And, the Alabama Supreme court held res judicata does not apply where plaintiffs successfully sued a driver for negligence

44

after a car accident, and later sued the driver's insurance company for damages. *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990). This was because the first action involved only questions of negligence, while the second action involved additional questions related to the insurance contract and was directed at a different defendant. *Id.*

Here, Plaintiff's first action against the City, Mayor Dollar, and Lakeside Investments (as well as other defendants not named in the instant action) argued that the lease of property to Lakeside in 2019 violated Alabama Code § 35-4-410 (Doc. # 25-1 at 12-14). The Alabama circuit court dismissed Plaintiff's claims because it held that Defendants had complied with § 94.01 of the Alabama Constitution, and that as a constitutional amendment, § 94.01 "overrides § 35-4-410," which would have required the City to obtain approval from a majority of qualified electors. (Doc. # 25-2 at 4). The court further held that "§ 35-4-410 is inapplicable in any event because the real property subject to the lease at issue was not dedicated as a public park or recreational facility within the meaning of Alabma law." (*Id.*). The court necessarily would have been required to review the following in assessing whether the City's lease of property violated Alabama Code § 35-4-410, including (1) the statutory text, (2) the constitutional text, and (3) the facts of the 2019 transaction (including the terms of the lease and the resolutions/ordinances passed). Plaintiff's second action against the City, Mayor Dollar, and Lakeside Investments (the instant action) involves some different legal theories, including a substantive and procedural due process theory (Doc. # 1 ¶¶ 41-50), an equal protection theory (*id.* ¶¶ 51-54), a breach of trust theory (*id.* ¶¶ 60-64), a § 1985(3) conspiracy to commit fraud theory (*id.* ¶¶ 65-71), and a state law fraud theory (*id.* ¶¶ 72-75). Additionally, Plaintiff's current lawsuit includes the same state law theory that Defendants acted *ultra vires* by not complying with Alabama Code § 35-4-410 and Alabama Constitution article IV, § 94.01. (*Id.* ¶¶ 55-59).

Each of these theories consider substantially the same evidence as Plaintiff's theory in the previous state court case. For example, Plaintiff's due process and equal protection theories here will necessarily rely on the evidence that Plaintiff was denied the right to use and enjoy the properties at issue and that the properties had been used in part as a public park before the development. (Doc. # 1 ¶¶ 43, 45). This evidence was at issue in Plaintiff's initial lawsuit. (Doc. # 25-1 ¶ 16).

Plaintiff's breach of trust theory was not raised in the first lawsuit, but it also will necessarily rely on substantially the same evidence as claims that were in the first lawsuit. For example, to argue that Alabama Code § 35-4-410 applied to the land leased to Lakeside in 2019, Plaintiff needed to argue that it was a "public park[]" or "playground[]" as specified in the statute, and Plaintiff did so in his complaint in that case. (Doc. # 25-1 ¶ 16) (alleging that the land "has been used for purposes of a public park or other recreational facilities"); (Doc. # 25-1 ¶ 18) (alleging that when Marshall County condemned the land they did so for the purpose of "constructing a public boat dock and a public recreational park"); (Doc. # 25-1 ¶ 23) (alleging that the land parcels "were used as a public park, or other recreational facilities"). Similarly, to argue that Defendants breached their duty as trustee of the land leased to Lakeside, Plaintiff was required to show that the land was entrusted to the City for the benefit of the public. Any evidence that would support the claims in the previous lawsuit would support the breach of trust claim. Because "substantially the same evidence would necessarily be required in order to support a recovery in both actions," the breach of trust claim is the "same claim" for purposes of res judicata. *Equity Resources Management, Inc. v. Vinson*, 723 So. 2d 634, 637 (Ala. 1998).

Plaintiff's Section 1985(3) conspiracy theory and state law fraud theory will rely on evidence of Defendants' statements pursuant to the land transactions and evidence of

discrimination or discriminatory animus. Plaintiff included allegations of similar evidence in his first case, including evidence that the City sought and obtained a declaratory judgment to confirm that the properties could be used "for any lawful use, without restriction," or that the City "fraudulently or in bad faith" issued public statements that the properties were no longer used for public purposes. (Doc. # 25-1 ¶¶ 20-21, 31).

Finally, the *ultra vires* theory is without question the same claim against some of the same Defendants (the City, Mayor Dollar, and Lakeside Investments). And, even if there were a question as to that point, it relies on the same evidence – the City's actions in connection with the 2019 lease to Lakeside, in addition to Alabama's statutory and constitutional language.

Because each of Plaintiff's theories (as they relate to the 2019 transaction) must necessarily rest on substantially the same evidence as Plaintiff's theories in the current case, they satisfy the final required element of res judicata. These theories as to the 2019 transaction also satisfy all other elements of res judicata, so each of Plaintiff's claims (as they relate to the 2019 transaction) are barred under this doctrine.

### 4.     Collateral Estoppel

Defendants also argue that the Plaintiff's claims against them as they relate to the 2023 transaction are barred under the doctrine of collateral estoppel. Federal courts must apply the rendering state's law of preclusion when considering whether to preclude state court judgments under collateral estoppel. *Community State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). Because an Alabama state court rendered the judgment in Plaintiff's initial case regarding this matter, Alabama state law supplies this court's law of collateral estoppel. In Alabama, collateral estoppel "bars a party from relitigating 'an issue identical to the one litigated in the prior suit' when 'resolution of the issue was necessary to the prior judgment" and the parties are the same.'"

*Harris v. Hicks*, 374 So. 3d 676, 680 (Ala. 2022) (quoting *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990)). Specifically, the elements of collateral estoppel in Alabama are: "(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Bonner v. Lyons, Pipes & Cook, P.C.*, 26 So. 3d 1115, 1121 (Ala. 2009) (quoting *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990)) (cleaned up).

The City and Mayor Dollar specifically argue that "central to and inextricably intertwined with each of plaintiff's claims . . . are the issues of whether the City's alienation of the Public Properties (lease or sale) for the City Harbor project was authorized by or complied with Section 94.01 and/or Section 35-4-410." (Doc. # 23 at 11). They further argued that "both of these identical issues were actually litigated and necessary to the prior judgment rendered in favor of the City and Mayor Dollar in [the first action]." (*Id.*).

In his Revised Brief in Opposition (Doc. # 32), Plaintiff asserts that he is not attempting to relitigate the issue of whether § 94.01 included "retail" (*id.* at 9), and that his current case includes "distinctly different" claims such as "the rights of the plaintiff and every other citizen of the city to be allowed to vote on the alienation of public use property for a private use, [and] a Due Process right." (*Id.*). Specific to the issue of collateral estoppel, Plaintiff argues that "[c]ollateral estoppel cannot apply to a compliant when the claims are only collateral to the state court judgment, not the same cause of action, and the state courts ruled 'case dismissed for failure to state a claim on which relief can be granted[.]' The appeals court 'Affirmed.' A motion to dismiss pursuant to Rule 12(b)(6) for failure ot state a claim tests the sufficiency of the complaint, <u>not its merits</u>." (Doc. # 32 at 12-13) (emphasis in original).

In their Reply (Doc. # 34), the City and Mayor Dollar note that Plaintiff failed to dispute that his claims in the current lawsuit are premised on whether "the City's alienation of the Public Properties (lease or sale) was authorized by or complied with Section 94.01 and/or Section 35-4-410." (*Id.* at 5). They also highlight that Plaintiff has not contested that both of these issues "were actually litigated and necessary to the prior judgment rendered" in the earlier case. (*Id.*).

Plaintiff's Rebuttal (Doc. # 36) argues that § 94.01 only applies to "property abandoned from either public or municipal use, and 'Sites for Industry' and 'Industrial Park Projects.'" (*Id.* at 3). He also argues that under Alabama Code § 35-4-410 the City was required to "give due process to the public" before selling or leasing the properties at issue. (*Id.*). Plaintiff highlights that the City and Mayor Dollar construed § 94.01 was "in a manner never intended by the legislature" and thus they were involved in a "conspiracy with Patrick Lawler." (*Id.* at 3-4). Finally, Plaintiff adds that the "leasing and sale of the Harbor property . . . is a 'direct benefit' to the private party in violation of state law." (*Id.* at 4).

The Lawler Defendants argue that all of the issues Plaintiff raises in the current lawsuit were already litigated in the prior state court action. Specifically, they argue that the prior lawsuit relied on the allegation that the City had violated Alabama Code § 35-4-410 in leasing land to Lakeside Investments, citing several of the same city council meetings, ordinances, leases, and properties as in the instant case. (Doc. # 30 at 8). They also point out that the defendants in the previous case argued and the state court ruled that § 94.01 was the applicable law that controls the issues surrounding the lease and that the lease was authorized under this law. (*Id.* at 9-10). Finally, they argue that "the same parties are involved in the present litigation." (*Id.* at 10).

Plaintiff responds in his Revised Brief in Opposition (Doc. # 35) that the issues in the previous case were different from the current case because, in the previous case, Plaintiff had

argued that § 94.01 did not apply to "retail," and did not argue (as he is now arguing) that the City failed to comply with Alabama Code § 35-4-410 or that the City was violating a due process right. (*Id.* at 9). Plaintiff further highlights that the state court had stated that § 35-4-410 was "irrelevant" in that case. (*Id.* at 10). Plaintiff also references his conspiracy claim, which appears to rest on a theory that Defendants violated § 35-4-410 and separately that they conferred a benefit on a private party. (*Id.* at 10-11).

Regarding the first element of collateral estoppel, the fact issue is identical. The issues in Plaintiff's first case include the questions of whether § 35-4-410 applies to the 2019 transaction, and whether these Defendants violated § 94.01 as applied to the 2019 transaction. Specifically, the Alabama Supreme Court held that § 94.01 overrides § 35-4-410, and that in the 2019 transaction the City complied with all required elements of § 94.01. Claims against Defendants that relate to these issues include Plaintiff's procedural due process claim and his *ultra vires* claim. This is because, as relevant to the 2023 transaction, both of these claims depend on the questions of whether § 94.01 overrides § 35-4-410 in the event of a conflict, and what process is due under § 94.01. These issues were actually litigated in the previous lawsuit, were fully addressed in the circuit court and on appeal to the Alabama Supreme Court, and those courts specifically considered and ruled on both issues. The resolution of these issues was central to this previous judgment. (*See* Doc. # 25-3 at 13-40) (discussing these two issues at length). As to the "same parties" element of collateral estoppel, only Plaintiff, the City, Mayor Dollar, and Lakeside Investments are the "same parties" as those who were present in the earlier state court suit. That means that the other Lawler Defendants must be able to establish their right to assert collateral estoppel on these two issues against Plaintiff on some other basis. In this posture, these Defendants would be asserting defensive non-mutual collateral estoppel. It is defensive because these Defendants are being sued

by Plaintiff, and it is non-mutual because these Defendants are not the same parties as those who were in the previous state court case. Although federal courts used to require strict mutuality of parties for collateral estoppel, the approach now is to allow defensive use of non-mutual collateral estoppel. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971). Therefore, all Defendants may collaterally estop Plaintiff from using these legal issues against them, namely that § 94.01 overrides § 35-4-410 in the event of conflict, that as in the 2019 transaction a "retail" development is an authorized purpose under § 94.01, and the 2019 transaction was an example of proper procedure under § 94.01.

Because these issues were incorporated earlier in the merits analysis, the court ends its analysis of the effect of this collateral estoppel here.

## CONCLUSION

There are several overlapping reasons for dismissing all of Plaintiff's claims. Although Plaintiff has standing to pursue each legal theory, his claims as to the 2019 transaction are time-barred by Alabama's two-year statute of limitations. Plaintiff's claims also fail on their pleadings – sometimes for multi-layered reasons. In addition, res judicata bars relitigation of Plaintiff's 2019 claims, despite the fact that he asserts several new legal theories in this lawsuit. Finally, collateral estoppel bars Plaintiff from relitigating two legal issues that were already litigated and decided by the Alabama Supreme Court. Taken together, none of Plaintiff's claims are sufficiently pleaded. For these reasons, the Motions to Dismiss (Docs. # 13, 14, 30) are due to be granted.

**DONE** and **ORDERED** this October 28, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE